**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Flores-Delgado, | No. CV-15-01273-PHX-JAT |
| Petitioner, | **ORDER** |
| v. | |
| Loretta Lynch, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Gabriel Flores-Delgado (Petitioner)'s Second Amended Petition for Writ of Habeas Corpus (Doc. 18), filed pursuant to 28 U.S.C. § 2241. Also pending before the Court is Petitioner's Motion for Expedite[d] Release (Doc. 27), Motion for Bond Hearing (Doc. 36), Motion for Status (Doc. 37), and Motion for Decision Under 60 Day Rule (Doc. 38). The Magistrate Judge to whom this case was assigned issued a Report and Recommendation (R&R) recommending that Petitioner's Second Amended Petition for Writ of Habeas Corpus and Motion for Expedited Release be denied. (Doc. 29). Petitioner filed an Objection (Doc. 34) and a Second Amended Objection (Doc. 35) to the R&R.[1]

**I.    STANDARD OF REVIEW FOR REPORT AND RECOMMENDATION**

The Court "may accept, reject, or modify, in whole or in part, the findings or

---

[1] Although only Petitioner's first objection (Doc. 34) was timely filed, the Court will consider Petitioner's amended objection (Doc. 35) as well where Petitioner is filing *pro se* and the arguments put forth in this objection, nonetheless, do not alter the Court's analysis.

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also* 28 U.S.C. § 636(b)(1) (stating that "the court shall make a de novo determination of those portions of the report [and] recommendations to which objection is made"). Because Petitioner appears to have objected to each of the R&R's recommendations, the Court will review those de novo.

## II.  BACKGROUND

The R&R sets forth the relevant background information underlying this case. *See* (Doc. 29 at 1–7, 10). To the extent neither party appears to dispute the R&R's procedural nor factual background, the Court will adopt the said account below as the basis for its review of Petitioner's motions and objections. The R&R states:

> On April 14, 2010, the Circuit Court of the State of Oregon, Marion County, convicted Petitioner of Sexual Abuse in the Second Degree. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 6; Attachment B.) On April 15, 2010, Petitioner was taken into the custody of U.S. Immigrations and Customs Enforcement (ICE) and issued a Notice to Appear (NTA), alleging that Petitioner was removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than designated by the Attorney General. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 7, Attachment C.)
>
> . . . .
>
> On August 11, 2011, Petitioner failed to appear for a hearing that was scheduled before an [Immigration Judge (IJ)] in Seattle, Washington and was ordered removed to Mexico in absentia. (*Id.*, Attachment E.) On August 27, 2011, ICE removed Petitioner to Mexico based on his final order of removal. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 11.)
>
> On October 21, 2011, Petitioner filed a motion to reopen the removal proceeding arguing that he failed to appear at the August 11, 2011 hearing because he was in custody pursuant to a bench warrant. (*Id.* at ¶ 12, Attachment F.) On November 8, 2011, an IJ granted Petitioner's motion to reopen that proceeding. (*Id.* at ¶ 13, Attachment G.) . . .
>
> On March 9, 2012, Petitioner re-entered the United States at or near Sasabe, Arizona, without inspection or parole by an immigration officer.

(*Id.* at ¶ 14.) On March 11, 2012, Petitioner was detained and issued a Notice of Intent/Decision to Reinstate Prior Order of Removal. (*Id.*)

On July 30, 2012, Petitioner was convicted in the United States District Court for the District of Arizona of violating 19 U.S.C. § 1459(e)(1), Failure to Enter into the United States at a Designated Border Crossing Point. (*Id.* at ¶ 15, Attachment H.) Petitioner was released to ICE custody in Florence, Arizona, pursuant to an immigration detainer. (Doc. 25, Ex. 1 Baeza Decl. at ¶ 15.) On September 17, 2012, Petitioner appeared before an IJ who reset the case to November 5, 2012. (*Id.* at ¶ 17.)

On October 19, 2012, DHS filed Additional Charges of Inadmissibility/Deportability, charging Petitioner as removable under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), for having been convicted of a crime involving moral turpitude. (*Id.* at ¶ 18, Attachment I.) On November 29, 2012, the IJ sustained the additional charge of removability and found Petitioner ineligible to apply for cancellation of removal. (*Id.* at ¶ 19.) The IJ also denied voluntary departure and ordered Petitioner removed to Mexico. (*Id.*, Attachment J.) Petitioner reserved his right to appeal, and filed a timely appeal with the Board of Immigration Appeals (BIA) . . . .

On October 18, 2013, Petitioner filed a petition for review of the BIA's September 23, 2013 decision [of removal] in the Ninth Circuit in Case No. 13-73691. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 31.) The Ninth Circuit granted Petitioner a temporary stay of removal while his petition for review remained pending. (*Id.*, Attachment T) (footnote omitted).

On June 18, 2013, Petitioner filed another petition for review with the Ninth Circuit in Case No. 13-72155. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 23, Attachment O.) This appeal is currently pending a decision. (*Id.*) (footnote omitted). On March 19, 2014, the Ninth Circuit combined Petitioner's petitions for review in Case Nos. 13-72155 and 13-73691. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 35.) A temporary stay of removal is still in effect. (*Id.*) . . .

On July 12, 2013, Petitioner's custody status was reviewed and it was determined that he should remain in custody. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 26.) On July 14, 2013, a Post Order Custody Review was conducted. (*Id.* at ¶ 27.) On July 24, 2014 [sic], it was determined that Petitioner should remain in custody. (*Id.*) (footnote omitted).

On October 4, 2013, Petitioner had a bond hearing before an IJ in Florence, Arizona. (*Id.* at ¶ 30.) That same date, the IJ denied Petitioner's request for a change in custody based on his conclusion that Petitioner represented a danger to the community and a flight risk. (*Id.* at ¶ 30, Attachment S.) Petitioner reserved his right to appeal. (*Id.*) On October 23, 2013, Petitioner timely appealed the IJ's October 4, 2013 decision to the BIA. (*Id.* at ¶ 32.)

Petitioner had another bond hearing in November 2013 before an IJ in Florence, Arizona.[2] (*Id.* at ¶ 33, Attachment U.) In a November 15, 2013 decision, that was filed on November 18, 2013, the IJ denied Petitioner's request for bond based on his finding that Petitioner was a danger to the community and a flight risk. (*Id.* at ¶ 33, Attachment U; Doc. 25, Ex. 2.) On February 7, 2014, the BIA affirmed the IJ's November 18, 2013 decision. (Doc. 25, Ex.1, Baeza Decl. at ¶ 34, Attachment V.)

On April 25, 2014, Petitioner's custody was reviewed by an IJ in Florence, Arizona. His request for bond was denied based on the IJ's conclusion that Petitioner was a danger to the community and a flight risk. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 36, Attachment W.) On May 14, 2014, Petitioner appealed the IJ's decision denying him bond to the BIA. (*Id.* at ¶ 38.) On December 19, 2014, the BIA adopted and affirmed the IJ's April 25, 2014 order denying Petitioner's request for a change in custody status. (*Id.* at ¶ 40, Attachment X.) In its decision, the BIA agreed with the IJ that Petitioner failed to present materially changed circumstances since the prior bond order, and that he remained both a danger to the community and a flight risk. (Doc. 25, Attachment X.)

On January 12, 2015, Petitioner's custody status was reviewed by an IJ in Florence, Arizona. (Doc. 25, Ex. 1, Baeza Decl. at ¶ 41.) That same day, the IJ denied Petitioner's request for bond based on his finding that Petitioner was a danger to community and a flight risk. (Doc. 25, Ex. 1, Baeza Decl., Attachment Z.)

On July 17, 2015, Petitioner filed a "request for a bond hearing pursuant to *Casas-Castrillon*."[3] (*Id.* at ¶ 46.) On August 31, 2015, an IJ in Eloy, Arizona denied Petitioner's request for another bond hearing. (*Id.* at ¶ 46, Attachment BB.) Petitioner appealed that decision to the BIA. (*Id.* at 46.) That appeal was pending as of the date the government filed its response. (*Id.* at ¶ 46, Attachment CC.)

---

[2] As the Magistrate Judge correctly observed, *see* (Doc. 29 at 9), the Baeza declaration states that Petitioner had bond hearings on both October 4, 2013 and November 18, 2013. (Doc. 25-1 at 3). But the IJ's November 15, 2013 order, that was filed on November 18, 2013, refers to the October 4, 2013 bond hearing, and does not mention another hearing in November 2013. (Doc. 25-3 at 6). The Court construes the procedural history to reflect that Petitioner had one bond hearing on October 4, 2013.

[3] The Baeza declaration refers to the April 25, 2014 and January 12, 2015 proceedings as "bond hearings." (Doc. 25, Ex. 1, Baeza Decl. at ¶¶ 36, 41.) However, Respondents' briefing does not characterize these proceedings as bond hearings under *Casas-Castrillon v. Dep't. of Homeland Security*, 535 F.3d 942, 948 (9th Cir. 2008) . . . . [The Court agrees with Respondents that these proceedings are properly characterized not as bond hearings, but as custody reviews.]

> . . . . [Here, the R&R discusses Petitioner's request for a U-Nonimmigrant Status Visa (U Visa) filed with the U.S. Citizenship and Immigration Services.[4]]
>
> On August 31, 2015, Petitioner filed his pending [habeas] Petition raising three grounds for relief. (Doc. 18.) In Grounds One and Three, Petitioner alleges that his prolonged detention while his petition for review is pending before the Ninth Circuit violates his right to procedural and substantive due process. (Doc. 1 at 4, 6.) In Ground Two, Petitioner simply states "Denial of Bond." (Doc. 1 at 5.)

(Doc. 29 at 2–7). Having stated the procedural and factual background relevant to the instant matter, the Court will now identify the legal standard to be applied to Petitioner's motions and requests.

## III. LEGAL STANDARD

Title 8, Section 1226 of the United States Code grants the Attorney General permissive authority to arrest and detain an alien pending a decision whether the alien is to be removed from the United States. 8 U.S.C. § 1226(a). Because the government retains an interest in assuring an alien's whereabouts, or presence, should a court order an alien's removal, it is reasonable for the government to detain the alien while he or she seeks judicial relief. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). To be sure, discretionary detention authority pursuant to § 1226(a) is limited to the "period reasonably necessary to bring about [an] alien's removal from the United States." *Prieto-Romero*, 534 F.3d at 1065 (citing *Zadvydas*, 533 U.S. at 689). The Ninth Circuit has held that the government may detain an alien who has been "subjected to a prolonged detention pending judicial review" of removal proceedings as long as the government provides "adequate procedural protections." *Casas-Castrillon*, 535 F.3d at 948, 950. Furthermore, the Ninth Circuit has held that "'adequate procedural protections'" requires that the "government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Prieto-Romero*, 534

---

[4] The Court will not review the factual background or procedural history of the U Visa Petition because this Court does not have jurisdiction over that matter.

- 5 -

F.3d at 1065 (quoting *Zadvydas*, 533 U.S. at 690–91); *see also Casas-Castrillon*, 535 F.3d at 951 (holding that an alien must be provided with an adequate opportunity to contest the necessity of his prolonged detention).

Namely, the Attorney General must provide an alien who has been detained for a prolonged period of time pursuant to 8 U.S.C. § 1226(a) an individualized bond hearing before an IJ. *Casas-Castrillon*, 535 F.3d at 951. Accordingly, because serious constitutional concerns exist where a statute may allow indefinite deprivation of human liberty, *Zadvydas*, 533 U.S. at 692, "an alien is entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community," *Casas-Castrillon*, 535 F.3d at 948 (internal quotations and citation omitted). Importantly, 8 U.S.C. § 1226(e) states that an IJ's discretionary determination on this point is nonreviewable:

> The Attorney General's discretionary judgment regarding [an alien's detention and release under] this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Pertinent to this case, such nonreviewable "discretionary judgment" of the Attorney General exists from the time when Federal Circuit Courts issue a stay pending review of an administratively final order of removal until the time when Circuit Courts render a decision and withdraw the stay of removal. *Prieto-Romero*, 534 F.3d at 1058–59. Following an initial bond redetermination, "an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

## IV.   DISCUSSION

First, the Court will discuss whether Petitioner is entitled to another bond hearing, including consideration of Petitioner's objections to the R&R's recommended denial of a bond hearing. Second, the Court will analyze whether Petitioner's detention is authorized by statute and in accordance with his substantive and procedural due process rights,

including consideration of the due process claims Petitioner raises in objection to the R&R. Third, the Court will address Petitioner's motion for expedited release. Lastly, the Court will consider Petitioner's motion for decision.

### A. Bond Hearing[5] and Custody Redetermination

Petitioner argues that he is entitled to a bond hearing because he has been in custody for a prolonged period of time, approximately forty-eight months. *See* (Doc. 18 at 4, 6; Doc. 35 at 1). However, Petitioner was afforded an individualized bond hearing before an IJ in Florence, Arizona, on October 4, 2013, *see* (Doc. 25-1, Attach. S at 2), which was reconsidered on November 15, 2013, *see* (Doc. 25-3). Furthermore, Petitioner's custody status has been reviewed by either an IJ or the BIA on at least five occasions since his removal was temporarily stayed by the Ninth Circuit. *See* (Doc. 25-1, Attachs. V, W, X, Z, BB).

At Petitioner's bond hearing, the IJ found that Petitioner was a "danger [to the community] and [a] flight risk," denying his release. (Doc. 25-1, Attach. S at 2). *See Casas-Castrillon*, 535 F.3d at 948 (9th Cir. 2008); *see also Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (holding that an alien is not entitled to release on bond if the "government establishes that he is a flight risk or will be a danger to the community"). In denying Petitioner's further requests for a change in his custody status, both the BIA and IJ referenced that Petitioner failed to present materially changed circumstances since his prior bond hearings and that he continued to remain a danger to the community and a flight risk. (Doc. 25-1, Attachs. X at 3, BB at 3–4).

It appears that in attempts either to satisfy this requirement of materially changed circumstances, *see* (Doc. 26 at 2), or to raise objections to the R&R, *see* (Doc. 34-1 at 3), Petitioner argues for his actual innocence of his sexual abuse conviction. Specifically,

---

[5] As stated previously, Petitioner's second ground for relief in his habeas petition simply states "Denial of Bond." (Doc. 18 at 5). Thus, Petitioner appears to challenge the denial of bond. But as the Magistrate Judge correctly notes, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Nonetheless, the Court will consider de novo Petitioner's arguments for his entitlement to a bond hearing raised in objection to the R&R and in subsequent motions. *See* (Docs. 34–36).

1  Petitioner argues that he does not pose a danger to the community because the victim of
2  his sexual abuse purportedly stated to the Police that her and Petitioner's sexual
3  encounter was consensual. *See* (*Id.*) Furthermore, Petitioner claims that the victim's
4  statements to the police that she was acting out of "resentment and spite" due to
5  Petitioner carrying on sexual relationships with other women is proof of his actual
6  innocence. (Doc. 34 at 9 (citing Doc. 34-1 at 3)). Petitioner's arguments go to the merits
7  of Petitioner's sexual abuse conviction; they do not constitute evidence of a material
8  change in circumstances justifying another bond hearing.  Indeed, Petitioner pleaded no
9  contest to sexual abuse in the second degree and was convicted.  Thus, this conviction
10 remains relevant to the IJ's and BIA's determinations that Petitioner posed a danger to
11 the community.[6] Furthermore, Petitioner's claim that due to the victim's statements he is
12 exonerated from his conviction of a crime of moral turpitude ultimately goes toward
13 issues of his removability or deportability, not his entitlement to another bond hearing.
14 *See Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005) (holding crimes of moral
15 turpitude, which include grave acts involving baseness or depravity, warrant removal or
16 deportation pursuant to INA § 237(a)(2)(A)(ii)).

17       Petitioner also moves the Court for a bond hearing in order that he might be
18 reunited with his family, whom Petitioner has been separated from for approximately the
19 last forty-eight months. *See* (Doc. 18 at 4, 6; Doc. 36 at 1). Petitioner has submitted his
20 son's medical, psychological, and education records with his motion for a bond hearing
21 that was filed on February 16, 2016. *See* (Doc. 36 at 2–11). These records detail his son's
22 diagnosis of and recommended treatment for attention deficit hyperactivity disorder.[7] *Id.*

---

[6] Likely contrary to Petitioner's intentions, the authority he cites in support of his contention that he does not pose a danger to the community tends to support, not undercut, the IJ's findings. For example, *Alarcon-Serrano v Immigration and Naturalization Serv.*, 220 F.3d 1116, 1119 (9th Cir. 2000) holds that a conviction is not required for an IJ to find that an alien poses a danger to the community. Rather, it is sufficient if an IJ "knows or has reason to believe" that the alien was engaged in illegal activity. *Id.* Thus, a conviction, moreover a charge of the gravity of sexual abuse, supports to an even greater extent the IJ's finding of Petitioner posing a danger to the community.

[7] Notably, Petitioner's son's medical, psychological, and education records that he

- 8 -

Pursuant to 8 U.S.C. § 1254(a)(1), hardship to a citizen or permanent resident child may be sufficient to warrant suspension of the parents' deportation. *Cerrillo-Perez v. I.N.S.*, 809 F.2d 1419, 1422 (9th Cir. 1987). Namely, preservation of family unity is one factor courts will consider in making a hardship determination within a deportation proceeding. *Id.* at 1423. However, Petitioner's deportation proceedings are not before this Court and there is no legal authority that suggests preservation of family unity is a factor to be considered in a motion for a bond hearing by a petitioner seeking habeas relief under § 2241. Thus, although it appears that Petitioner's children are United States citizens, *see* (Doc. 25-1, Attach. A at 3), and that Petitioner's family unity may be a relevant consideration in a deportation determination, the Court will not take into account this factor in Petitioner's motion for a bond hearing.

Accordingly, the Court will deny Petitioner's motions for another bond hearing because Petitioner has already been afforded an individualized bond hearing in accordance with *Casas-Castrillon*. *See* (Doc. 25-1, Attach. S at 2). Furthermore, the evidence Petitioner has put forth fails to demonstrate the requisite material change in circumstances to warrant another bond hearing determination—that he no longer poses a danger to the community or a flight risk. Moreover, the IJ's discretionary decisions granting or denying bond are not subject to judicial review, *see* 8 U.S.C. § 1226(e) (stating that the Attorney General's discretionary judgment regarding detention of an alien "shall not be subject to review"); *Prieto-Romero*, 534 F.3d at 1058 (holding that an "alien may appeal the IJ's bond decision to the BIA . . . but discretionary decisions granting or denying bond are not subject to judicial review").

### B. Due Process Violations

Petitioner alleges that his continued detention while he awaits a decision of his appeal before the Ninth Circuit "is not authorized by any statute" and "violates both his

---

submitted all appear to be from institutions in Mexico. *See* (Doc. 36 at 2–11).Thus, Petitioner gives the impression that his son, at the very least, receives medical care and attends school in Mexico. If Petitioner is seeking bond in order to be reunited with his children (seemingly in Mexico), it would tend to support the IJ's and BIA's findings that Petitioner is a flight risk. *See* (Doc. 29 at 5–6).

- 9 -

substantive and procedural due process rights." *See* (Doc. 18 at 4, 6). However, the Court agrees with the R&R's recommendation that Petitioner's detention is authorized by § 1226(a), which allows the Attorney General to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Casas-Castrillon*, 535 F.3d at 948. Although Petitioner's custody has spanned a time period of several years, Petitioner's procedural and substantive due process rights have not been violated. *See Casas-Castrillon*, 535 F.3d at 951. Importantly, as stated previously, Petitioner received an individualized bond hearing before an IJ in accordance with *Casas-Castrillon* on October 4, 2013 and the IJ found Petitioner posed a flight risk and danger to the community. (Doc. 25-3 at 9–12). The IJ stated that the government had met its burden of establishing by clear and convincing evidence that Petitioner should not be released pending judicial review of the BIA's order of removal. (*Id.* at 12). The primary evidence the IJ relied upon in his determination was Petitioner's criminal history (including criminal charges or convictions for forcible sodomy, assault, domestic violence, theft, and identity theft), "his history of failing to comply with immigration orders, his limited ties to the United States, and a disincentive for him to appear given the apparent weakness of his case." (Doc. 29 at 9 (citing Doc. 25-3 at 11–12)). To the extent that Petitioner appears to challenge the merits of the IJ's and BIA's findings that he posed a flight risk and a danger to the community, as stated previously, the Court does not have authority to review the IJ's discretionary judgment regarding a petitioner's detention or release. *See* 8 U.S.C. § 1226(e).

Additionally, Petitioner has received copious other custody reviews. As mentioned *supra*, either an IJ or the BIA has reviewed Petitioner's custody status on at least five occasions since his removal was temporarily stayed by the Ninth Circuit. See (Doc. 25-1, Attachs. V, W, X, Z, BB). Most recently, on August 31, 2015, an IJ considered and denied Petitioner's further request for another bond hearing (Doc. 25-1, Attach. BB at 3–4). The IJ reasoned that Petitioner failed to demonstrate, or even argue as is his burden, that his circumstances had materially changed. (*Id.*) For the same reasons as set forth in

the Court's analysis above regarding a bond hearing, the Court finds that Petitioner's continued detention does not violate his procedural or substantive due process rights.

In his objections to the R&R, Petitioner appears to claim several other alleged due process violations. *See* (Docs. 34, 35). First, Petitioner alleges he is being subjected to double jeopardy. (Doc. 35 at 11). Second, Petitioner alleges Border Patrol Officers physically abused him, using excessive force. (*Id.* at 13).

As to Petitioner's first charge, Petitioner has not been subjected to double jeopardy. *See* U.S. Const. amend. V ("[n]o person shall be subject for the same offence to be twice put in jeopardy of life or limb"). Here, Petitioner seems to be referencing statements contained in the R&R that "[o]n October 19, 2012, DHS filed Additional Charges of Inadmissibility/Deportability, charging Petitioner as removable . . . for having been convicted of a crime involving moral turpitude", (Doc. 29 at 3), and the IJ's consideration of dismissed charges against Petitioner for assault, theft, and identity theft as relevant criminal history, (Doc. 25-3 at 9–11). On the contrary, Petitioner has not been prosecuted twice for any crime. DHS merely filed additional grounds for which Petitioner was subject to removal; specifically his reentry to the United States without inspection or parole by an immigration officer and his conviction of failing to enter the country at a designated border crossing point. Furthermore, Petitioner is not being subjected to double jeopardy by virtue of the IJ citing his Oregon state criminal conviction for sexual abuse in the second degree and his dismissed charges of assault, theft, and identity theft in his bond hearing determination. Instead, as discussed *supra*, Petitioner's conviction and criminal charges are deemed relevant evidence regarding a determination of the potential danger he poses to the community. *See Casas-Castrillon*, 535 F.3d at 948; *Alarcon-Serrano*, 220 F.3d at 1119.

As to Petitioner's second charge, alleged physical abuse by law enforcement officers is unrelated to whether Petitioner has been afforded adequate procedural protections to ensure that his prolonged detention is justified. *See Prieto-Romero*, 534 F.3d at 1065 (holding that appropriate factors for consideration of whether prolonged

detention is justified relate to a petitioner's dangerousness and risk of flight). For these reasons, the Court finds that Petitioner's continued detention is not unlawful and that his due process rights have not been violated.

### C. Motion for Expedited Release

After the habeas petition (Doc. 18) was fully briefed, Petitioner filed a motion for expedited release under 28 U.S.C. § 1254(a). *See* (Doc. 27). The motion states that Petitioner appeals the IJ's denial of cancellation of removal and appears to raise nearly identical challenges to Petitioner's detention as he asserted in the pending habeas petition, which the Court has already addressed above. Thus, the Court will deny the motion for the expedited release.

### D. Motion for Decision Under 60 Day Rule

Most recently on April 25, 2016, Petitioner filed a "60 days Rule" motion for habeas relief under 8 C.F.R. § 1241.13–14.[8] (Doc. 38). Section 1241.14 that Petitioner cites does not apply to his continued detention because it governs "Post-Hearing Detention and Removal," where "there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 1241.14. Conversely, Petitioner is being detained pursuant to 8 U.S.C. § 1226(a) precisely for the purpose that when the Ninth Circuit rules on his appeal in the reasonably foreseeable future, his whereabouts are known should his order of removal be affirmed. *See Prieto-Romero*, 534 F.3d at 1065. In a like vein, § 1241.13 that Petitioner cites does not apply to his current circumstances because it only governs review procedures for aliens that "would not pose a danger to the public or a risk of flight," but the IJ found and the BIA affirmed that the government met its burden of establishing that Petitioner does pose such risks. Thus, because the provisions that Petitioner cites are inapposite to his instant case of detention by virtue of

---

[8] In this motion, Petitioner also refers to "C.F.R. § 1241.3(b)(2)(ii)." (Doc. 38 at 2). However, this subsection of the provision only applies to deportation proceedings commenced before April 1, 1997. C.F.R. § 1241.3(b)(2)(ii). Clearly, all of Petitioner's immigration and removal proceedings commenced after that date and the Court is not reviewing Petitioner's detention post a deportation hearing. Therefore, this subsection of the provision is inapplicable.

- 12 -

his appeal to the Ninth Circuit of an administratively final order of removal, the Court finds Petitioner's Motion for "60 days Rule" lacks merit and the Court will deny the motion.

V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Report and Recommendation is accepted (Doc. 29), Petitioner's objections (Docs. 34, 35) are overruled, and the Second Amended Petition for Writ of Habeas Corpus (Doc. 18) is **DENIED.** The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Expedited Release (Doc. 27) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion for Bond Hearing (Doc. 36) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion for Status (Doc. 37) is **DENIED AS MOOT.**[9]

**IT IS FINALLY ORDERED** that Petitioner's Motion for Decision Under 60 Day Rule (Doc. 38) is **DENIED.**

Dated this 17th day of May, 2016.

_____
James A. Teilborg
Senior United States District Judge

---

[9] This Order constitutes notification of the status of Petitioner's motions and requests before the Court, rendering Petitioner's motion for status moot.

- 13 -